1  GIBSON, DUNN & CRUTCHER LLP
   JOSHUA S. LIPSHUTZ, SBN 242557
2    jlipshutz@gibsondunn.com
   555 Mission Street, Suite 3000
3  San Francisco, CA 94105-0921
   Telephone:   415.393.8200
4  Facsimile:   415.393.8306

5  THEANE EVANGELIS, SBN 243570
     tevangelis@gibsondunn.com
6  MICHAEL HOLECEK, SBN 281034
     mholecek@gibsondunn.com
7  333 South Grand Avenue
   Los Angeles, CA 90071-3197
8  Telephone:   213.229.7000
   Facsimile:   213.229.7520
9

10  Attorneys for Defendant DOORDASH, INC.

11

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16

17  JEANETTE WASS,                          CASE NO. 3:19-cv-04637-LB

18              Plaintiff,                  **DEFENDANT'S NOTICE OF MOTION AND
                                            MOTION TO COMPEL ARBITRATION
19       v.                                 AND STAY PROCEEDINGS**

20  DOORDASH, INC.,                         [*Declarations of Stanley Tang, Cody Aughney,
                                            and Joshua Lipshutz and [Proposed] Order filed
21              Defendant.                  concurrently herewith*]

22                                          Action Filed:  August 9, 2019

23                                          Hearing Date: November 14, 2019
                                            Hearing Time: 9:30 a.m.
24                                          Hearing Place: Courtroom B – 15th Floor
                                            Hon. Laurel Beeler
25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 14, 2019, at 9:30 a.m., or as soon as the matter may be heard before the Honorable Laurel Beeler of the United States District Court for the Northern District of California in the San Francisco Courthouse, Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant DoorDash, Inc. will and does move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiff Jeanette Wass and staying this action. This motion is brought on the grounds that Plaintiff's claims against DoorDash are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate those claims on an individual basis. *See* 9 U.S.C. §§ 3–4.

DoorDash's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Stanley Tang, Cody Aughney, and Joshua Lipshutz, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: September 16, 2019              GIBSON, DUNN & CRUTCHER LLP


                                        By:   */s/ Joshua Lipshutz*
                                                     Joshua Lipshutz

                                        Attorneys for Defendant DOORDASH, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ................................................................. 2

    A. DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors ......................................................................................... 2

    B. Plaintiff Signs Up For A DoorDash Account In June 2019 .......................... 2

    C. Plaintiff Attempts To Opt Out Of The ICA's Arbitration Agreement After The Expiration Of The 30-Day Period To Do So .......................................... 4

III. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS .......................................................................................... 5

    A. The Arbitration Agreement Is Governed By The Federal Arbitration Act .................. 5

    B. The Arbitration Agreement Is Valid And Must Be Enforced ....................... 8

        1. The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable .......................................................................... 8

        2. The Gateway Issues Under The FAA Have Been Satisfied ............ 10

    C. The Arbitration Class Action Waiver Is Valid And Enforceable ............... 13

    D. At Minimum, This Action Should Be Stayed Pending Arbitration Of Plaintiff's Individual Claims ..................................................................... 15

IV. CONCLUSION ................................................................................................... 15

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ...........................................................................................7

*Am. Express Corp. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ...........................................................................................1

*Armstrong v. Michaels Stores, Inc.*,
    2018 WL 6505997 (N.D. Cal. Dec. 11, 2018) .................................................15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................1, 6, 14

*Bekele v. Lyft, Inc.*,
    918 F.3d 181 (1st Cir. 2019) ........................................................................1, 14

*Bonner v. Mich. Logistics Inc.*,
    250 F. Supp. 3d 388 (D. Ariz. 2017) ...............................................................10

*Bradford v. Flagship Facility Servs. Inc.*,
    2017 WL 3130072 (N.D. Cal. July 24, 2017) ..................................................10

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ......................................................................8, 9

*Burks v. Autonomy, Inc.*,
    2012 WL 13005954 (S.D. Fla. May 15, 2012) ..................................................7

*Caccavelli v. Jetro Holdings, LLC*,
    2019 WL 499767 (E.D.N.Y. Feb. 8, 2019) ...................................................1, 15

*Castro v. Macy's, Inc.*,
    2017 WL 344978 (N.D. Cal. Jan. 24, 2017) ....................................................10

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) .....................................................................9, 10

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ...........................................................................................7

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015) ........................................................................................6

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977) .............................................................................11

*Edwards v. DoorDash, Inc.*,
    2016 WL 7852532 (S.D. Tex. Dec. 8, 2016) ...............................................5, 13

Gibson, Dunn &
Crutcher LLP

*Edwards v. DoorDash, Inc.*,
2017 WL 5514302 (S.D. Tex. Oct. 18, 2017) ........................................................5, 6, 13

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ..............................................................................................12

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ..................................................................................1, 6, 11, 14

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
35 Cal. 3d 312 (1983) .............................................................................................8

*Erwin v. Citibank, N.A.*,
2017 WL 1047575 (S.D. Cal. Mar. 20, 2017) ............................................................10

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ..............................................................................................11

*Gaffers v. Kelly Servs., Inc.*,
900 F.3d 293 (6th Cir. 2018) ...............................................................................1, 14

*Gutierrez v. Jolt Delivery, LLC*,
2018 WL 6118581 (C.D. Cal. Aug. 7, 2018) .............................................................1, 15

*Heidrich v. PennyMac Fin. Servs. Inc.*,
2018 WL 3388458 (E.D. Cal. July 11, 2018) ............................................................1, 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .............................................................................................8

*Herrington v. Waterstone Mortg. Co.*,
907 F.3d 502 (7th Cir. 2018) ...............................................................................1, 14

*Horenstein v. Mortg. Mkt., Inc.*,
9 F. App'x 618 (9th Cir. 2001) ...............................................................................14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ................................................................................................8

*Jacobson v. Snap-on Tools Co.*,
2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) ..............................................................15

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) ...............................................................................1, 14

*Khalatian v. Prime Time Shuttle, Inc.*,
237 Cal. App. 4th 651 (2015) ...................................................................................7

Gibson, Dunn &
Crutcher LLP

Page(s)

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ................................................................9, 10

*Levin v. Caviar, Inc.*,
146 F. Supp. 3d 1146 (N.D. Cal. 2015) ....................................................12

*Long v. Provide Commerce, Inc.*,
245 Cal. App. 4th 855 (2016) ....................................................................12

*Magana v. DoorDash, Inc.*,
343 F. Supp. 3d 891 (N.D. Cal. 2018) ..................................1, 5, 13, 15

*Manard v. Knology, Inc.*,
2010 WL 2528320 (M.D. Ga. June 18, 2010) ............................................7

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) ....................................................................11

*Mastrobuono v. Shearson Lehman Hutton*,
514 U.S. 52 (1995) ................................................................................6, 14

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
109 Cal. App. 4th 1705 (2003) ..................................................................11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........................................................................11

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)..........................................................8, 9, 10

*Montes v. San Joaquin Cmty. Hosp.*,
2014 WL 334912 (E.D. Cal. Jan. 29, 2014)................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................................................................................6, 8

*Posephny v. AMN Healthcare Inc.*,
2019 WL 452036 (N.D. Cal. Feb. 5, 2019) ..............................................10

*Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*,
2018 WL 4586960 (N.D. Cal. Sept. 25, 2018) ..........................................15

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)......................................................................................8

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110 (2006) ....................................................................6

Gibson, Dunn &
Crutcher LLP

Page(s)

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) ................................................................................11

*Scott v. Yoho*,
    248 Cal. App. 4th 392 (2016) ........................................................................7

*Silva v. Darden Restaurants, Inc.*,
    2018 WL 3533364 (C.D. Cal. July 20, 2018) ..........................................1, 14

*Spikener v. Noble Food Grp., Inc.*,
    2018 WL 4677680 (N.D. Cal. Sept. 27, 2018) .............................................10

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ....................................................................11

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990) ........................................................................12

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .........................................................12

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ..............................................12

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)................................................................................11, 12

*Valencia v. Smyth*,
    185 Cal. App. 4th 153 (2010) ........................................................................6

*Voll v. HCL Techs. Ltd.*,
    2019 WL 144863 (N.D. Cal. Jan. 9, 2019) ..................................................10

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)......................................................................................14

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996)........................................................................12

**Statutes**

9 U.S.C. § 2 ..............................................................................................................6

9 U.S.C. § 3 ........................................................................................................2, 15

9 U.S.C. § 4 ..............................................................................................................8

29 U.S.C. § 216(b) ..................................................................................................15

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Civ. Code § 1550 ................................................................................................................11

Cal. Civ. Code § 1556 ................................................................................................................11

Cal. Civ. Code § 1565 ................................................................................................................11

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

Plaintiff Jeanette Wass claims that Defendant DoorDash, Inc. has misclassified all of its delivery providers across the United States as independent contractors, and she purports to bring this lawsuit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). DoorDash disputes the merits of Plaintiff's claims, but as a threshold matter, Plaintiff cannot litigate these claims in this Court because she agreed to arbitrate any claims against DoorDash on an individual basis.

The Supreme Court repeatedly has held that arbitration agreements requiring individualized arbitration must be enforced. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). The parties' Arbitration Agreement here, including its individualized-arbitration requirement, is valid and enforceable under the Federal Arbitration Act ("FAA"), and covers all of the claims Plaintiff alleges in this action. Every court to examine DoorDash's Independent Contractor Agreement ("ICA") has found that it is governed by the FAA, and courts regularly compel contractors like Plaintiff to individualized arbitration. Indeed, in October 2018, this Court (the Honorable Phyllis Hamilton) granted DoorDash's motion to compel individualized arbitration based on a materially identical arbitration agreement. *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018); *see also Farran v. DoorDash, Inc.* (O.C. Super. Ct. Mar. 7, 2019) (Lipshutz Decl. Ex. A) (granting DoorDash's motion to compel arbitration of putative class action); *Marko v. DoorDash, Inc.* (L.A. Super. Ct. May 29, 2018) (Lipshutz Decl. Ex. D) (same).

Many courts have recognized that collective-action waivers like the one in DoorDash's ICA must be enforced under the Supreme Court's *Epic Systems* decision. *See, e.g.*, *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018); *Bekele v. Lyft, Inc.*, 918 F.3d 181, 186 (1st Cir. 2019); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 n.20 (5th Cir. 2019); *Herrington v. Waterstone Mortg. Co.*, 907 F.3d 502, 506 (7th Cir. 2018); *Silva v. Darden Restaurants, Inc.*, 2018 WL 3533364, at *5 (C.D. Cal. July 20, 2018); *Heidrich v. PennyMac Fin. Servs. Inc.*, 2018 WL 3388458, at *3–4 (E.D. Cal. July 11, 2018); *Gutierrez v. Jolt Delivery, LLC*, 2018 WL 6118581, at *5 (C.D. Cal. Aug. 7, 2018); *Caccavelli v. Jetro Holdings, LLC*, 2019 WL 499767, at *4 (E.D.N.Y. Feb. 8, 2019).

Gibson, Dunn &
Crutcher LLP

That same result should follow here. DoorDash respectfully requests that the Court compel Plaintiff to arbitrate her claims on an individual basis and stay this action. *See* 9 U.S.C. § 3 ("If any suit … be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ….") (emphasis added).

## II.     STATEMENT OF RELEVANT FACTS

### A.     DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors

DoorDash is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform. Tang Decl. ¶ 4. The platform connects customers, a broad array of restaurants, and independent-contractor delivery providers ("contractors"). *Id.* Customers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone. *Id.* Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device. *Id.*

### B.     Plaintiff Signs Up For A DoorDash Account In June 2019

On June 13, 2019, Plaintiff agreed to DoorDash's Independent Contractor Agreement when she signed up to create an account with the DoorDash platform. Tang Decl. ¶ 5. To sign up for an account with the DoorDash platform, Plaintiff had to enter her email address, phone number, and zip code, and click "Get Started." *Id.* ¶ 8, Ex. B. Immediately above the "Sign Up" button, Plaintiff was informed that "By clicking 'Sign Up' below, I agree to the **Independent Contractor Agreement** and have read the **Dasher Privacy Policy**." *Id.* The words "Independent Contractor Agreement" and "Dasher Privacy Policy" were highlighted in blue text and hyperlinked to the ICA and Dasher Privacy Policy so that the user could review those documents before indicating his or her agreement to them. *Id.*

On June 13, 2019, Plaintiff entered her email, phone number and zip code into the DoorDash sign-up screens and clicked the "Sign Up" button. *Id.* ¶¶ 5–10. Accordingly, Plaintiff agreed to DoorDash's ICA, which contained a mutual arbitration provision providing that the parties will arbitrate any disputes, including those relating to the ICA or their relationship.

The following language appeared in bold, capitalized text in the second paragraph of the first

page of the ICA to put the user on notice of the existence of the Arbitration Agreement:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

*Id.* Ex. A at p. 1.

Section XI of the ICA is entitled "MUTUAL ARBITRATION PROVISION." *Id.* § XI. Under that section, "CONTRACTOR and DOORDASH mutually agree[d]" to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court, including "any and all claims arising out of or relating to this Agreement [or] CONTRACTOR's classification as an independent contractor." *Id.* § XI.1. The ICA's Arbitration Agreement contains a delegation clause providing that the arbitrator will decide all issues of arbitrability, except for the validity of the Arbitration Class Action Waiver. *Id.*

The Arbitration Agreement also contains numerous consumer-friendly provisions designed to make the arbitration cost-effective, efficient, and fair for both parties. For example, the Arbitration Agreement invokes the well-established American Arbitration Association ("AAA") rules for the proceeding and provides a hyperlink to those rules. *Id.* §§ XI.5, XI.7. The Arbitration Agreement also allows Plaintiff to demand that the arbitration take place within 45 miles of her residence, discovery is permitted, and "the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law …." *Id.* § XI.5.

Although the ICA has an Arbitration Agreement, DoorDash does not force it on its contractors. The second paragraph of the ICA referenced this opt-out right in bold, capitalized text. *Id.* at p. 1. Similarly, Section XI.8 of the ICA explained this opt-out right in bold font:

> **CONTRACTOR's Right to Opt Out of Arbitration Provision. Arbitration is not a mandatory condition of CONTRACTOR's contractual relationship with DOORDASH, and therefore CONTRACTOR may submit a statement notifying**

**DOORDASH that CONTRACTOR wishes to opt out and not be subject to this MUTUAL ARBITRATION PROVISION**. In order to opt out, CONTRACTOR must notify DOORDASH in writing of CONTRACTOR's intention to opt out by sending a letter, by First Class Mail, to DoorDash, Inc., 901 Market Street, Suite 600, San Francisco, CA, 94131. Any attempt to opt out by email will be ineffective. The letter must state CONTRACTOR's intention to opt out. In order to be effective, CONTRACTOR's opt out letter must be postmarked within 30 days of the effective date of this Agreement. The letter must be signed by CONTRACTOR himself/herself, and not by any agent or representative of CONTRACTOR. The letter may opt out, at most, only one CONTRACTOR, and letters that purport to opt out multiple CONTRACTORS will not be effective as to any. No CONTRACTOR (or his or her agent or representative) may effectuate an opt out on behalf of other CONTRACTORS. If CONTRACTOR opts out as provided in this paragraph, CONTRACTOR will not be subject to any adverse action from DOORDASH as a consequence of that decision and he/she may pursue available legal remedies without regard to this Mutual Arbitration Provision. If CONTRACTOR does not opt out within 30 days of the effective date of this Agreement, CONTRACTOR and DOORDASH shall be deemed to have agreed to this Mutual Arbitration Provision. CONTRACTOR has the right to consult with counsel of CONTRACTOR's choice concerning this Mutual Arbitration Provision (or any other provision of this Agreement).

Ex. A, § XI.8 (emphasis in original).

Under the terms of the ICA, therefore, Plaintiff was required to postmark any letter attempting to opt out of the Arbitration Agreement by July 13, 2019. *See id.*[1]

## C. Plaintiff Attempts To Opt Out Of The ICA's Arbitration Agreement After The Expiration Of The 30-Day Period To Do So

Plaintiff alleges that she sent a letter to DoorDash expressing her desire to opt out of the Arbitration Agreement on August 1, 2019. Compl. ¶ 13. But Plaintiff's attempted opt-out was ineffective under the terms of the ICA because it was not sent within 30 days of Plaintiff accepting the ICA on June 13, 2019. *See* Tang Decl. Ex. A, § XI.8; Tang Decl. ¶ 12.

---

[1] The ICA also contains a separate, stand-alone Litigation Class Action Waiver, which is not part of the Arbitration Agreement. The Litigation Class Action Waiver states that "any proceeding to litigate in court … will be conducted solely on an individual basis, and CONTRACTOR agrees not to seek to have any controversy, claim or dispute heard as a class action, a representative action, a collective action, a private attorney-general action, or in any proceeding in which CONTRACTOR acts or proposes to act in a representative capacity ('Litigation Class Action Waiver')." Tang Decl. Ex. A, § XII. In the event that the Court finds that any part of Plaintiff's claims must be litigated under the ICA (it should not), DoorDash preserves all arguments, including that the Litigation Class Action Waiver is valid and enforceable and prevents Plaintiff from litigating in court on a class, collective, or representative basis.

### III. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE
### HER CLAIMS ON AN INDIVIDUAL BASIS

The FAA controls the parties' arbitration agreement, and imposes a heavy burden on Plaintiff to avoid arbitration. Here, the parties' agreement delegates to the arbitrator the two primary "gateway" issues—whether there is a valid arbitration agreement and whether it covers this dispute. In any event, as described below, both gateway issues are easily satisfied here. The only gateway issue reserved for the Court is whether Plaintiff's Arbitration Class Action Waiver is enforceable. As explained below, the Supreme Court's recent decision in *Epic Systems* confirms that the Arbitration Class Action Waiver is enforceable.

Numerous courts have enforced DoorDash's arbitration agreement and compelled contractors like Plaintiff to arbitrate their claims on an individual basis. *See Magana*, 343 F. Supp. 3d at 899–900 (compelling arbitration); *Farran* (Lipshutz Decl. Ex. A) (compelling arbitration); *Marciano v. DoorDash, Inc.* (S.F. Super. Ct., Dec. 7, 2018) (Lipshutz Decl. Ex. C) (staying proceedings); *Marko* (Lipshutz Decl. Ex. D) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *13 (S.D. Tex. Oct. 18, 2017), *report and rec. adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (compelling arbitration after severing two provisions which are not in the ICA), *aff'd*, 888 F.3d 738 (5th Cir. 2018); *DoorDash, Inc. v. Marciano* (Santa Clara Super. Ct. Mar. 21, 2016) (Lipshutz Decl. Ex. E) (compelling arbitration of complaint filed before California Division of Labor Standards Enforcement); *Lyons v. DoorDash, Inc.* (C.D. Cal. May 19, 2017) (Lipshutz Decl. Ex. F). Indeed, in *Lyons*, the plaintiff stipulated to arbitration upon reviewing DoorDash's motion to compel. *Id.* Plaintiff can offer the Court no reason to adopt an aberrant result here.

This case involves substantially similar parties, factual allegations, legal theories, and contractual arbitration provisions as *Magana*, *Farran*, and the rest of these cases. As explained below, this Court should compel Plaintiff to arbitration on an individual basis and stay the action.

#### A. The Arbitration Agreement Is Governed By The Federal Arbitration Act

Courts unanimously have concluded that the FAA governs DoorDash's ICA. *Magana*, 343 F.

Supp. 3d at 899; *Farran* (Lipshutz Decl. Ex. A), at 1; *Marko* (Lipshutz Decl. Ex. D), at 2; *Edwards*, 2017 WL 5514302, at *13; *Marciano* (Lipshutz Decl. Ex. E), at 4.

All of these cases correctly applied the FAA, which declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 346; *Epic Sys.*, 138 S. Ct. at 1621. Section 2 of the FAA provides: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). If an agreement is governed by the FAA, courts must effectuate Congress' intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Here, the Arbitration Agreement is governed by the FAA for two independent reasons. **First**, the Agreement expressly states that it is governed by the FAA (Tang Decl. Ex. A, § XI.1), which is sufficient to bring it within the purview of the FAA. *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468–71 (2015). The FAA governs contracts—even absent evidence of an effect on interstate commerce—if the parties so agree. *See Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (courts honor parties' contractual agreement to be bound by the FAA) (citing *Valencia v. Smyth*, 185 Cal. App. 4th 153, 179 (2010) (where no party alleged that the contract affected interstate commerce, "the language of the Agreement … dictates the applicable law")); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1116, 1121 (2006).

The ICA contains two choice-of-law provisions that invoke the FAA. Tang Decl. Ex. A, § XI.1 ("This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16)"); *id.* § XIV.3 ("[T]he Mutual Arbitration Provision … is governed by the Federal Arbitration Act."). Courts must "enforce arbitration agreements according to their terms." *Epic Sys.*, 138 S. Ct. at 1619; *see also Mastrobuono*, 514 U.S. at 62–64 (construing choice-of-law provision in favor of arbitration). And the terms of the ICA are clear: "The parties expressly agree that this [ICA] shall be governed by the FAA." Tang Decl. Ex. A, § XI.1.

**Second**, the FAA applies because the Agreement "affect[s] commerce." *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement "involv[e] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection"). The phrase "involving commerce" is "functional[ly] equivalent" to the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273. This is so "even if the parties did not contemplate an interstate commerce connection." *Id.* at 281; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce'"). For the FAA to apply, a party need not "show[] any specific effect upon interstate commerce," as long as "in the aggregate the economic activity in question would represent a general practice ... subject to federal control." *Alafabco*, 539 U.S. at 56–57.

Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet. *See Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services); *Burks v. Autonomy, Inc.*, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company dealing in Internet content management solutions with clients across the United States"); *Scott v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (FAA governed contract when doctor engaged in Internet advertising and communication with out-of-state patients by telephone, mail and email); *Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 658 (2015) (FAA governed contract of shuttle driver who drove only in California where defendant's customers made reservations and paid for rides over Internet).

DoorDash "is a technology startup … that facilitates food delivery through its online platform," and its "platform connects customers, a broad array of restaurants, and [contractors]. Customers can access the platform via the DoorDash website or a mobile application on a smartphone. Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device." Tang Decl. ¶ 4; *see also* Aughney Decl. ¶¶ 4–8 (explaining interstate nature of DoorDash's business). Further, Plaintiff expressly "acknowledge[d]" that DoorDash's "business … is to provide an online marketplace connection using web-based technology that connects contractors, restaurants

and/or other businesses, and consumers." Tang Decl. Ex. A, § III.3. Indeed, Plaintiff also agreed to "immediately notify" DoorDash if she disagreed with this characterization of DoorDash's business. *Id.* § III.3. She did not do so.

**B.  The Arbitration Agreement Is Valid And Must Be Enforced**

Consistent with the principle that arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that … [it] should be resolved ***in favor of arbitration***, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) (citing *Moses H. Cone* for same).

**1.  The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable**

Before reaching these gateway issues, however, a court must first examine the agreement to determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce …."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues. *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (clear and unmistakable delegation clauses must be enforced under binding Supreme Court precedent); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (clearly and unmistakably delegated arbitrability issues to arbitrator).

Here, the Arbitration Agreement clearly and unmistakably provides that, except for questions

regarding the enforceability of the Arbitration Class Action Waiver, "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable ***shall be determined exclusively by an arbitrator***, and not by any court." Tang Decl. Ex. A, § XI.3 (emphasis added). Moreover, the Arbitration Agreement expressly incorporates the AAA Commercial Arbitration Rules ("AAA Rules"). *Id.* at XI.5. Rule 7 of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]" Lipshutz Decl. Ex. B, at R.7(a). The express incorporation of the AAA Rules therefore constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. *See Brennan*, 796 F.3d at 1130–31 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agree to arbitrate arbitrability"). The Court should enforce this clear and unmistakable agreement and decide only the issue of the enforceability of the Arbitration Class Action Waiver. *See Mohamed*, 848 F.3d at 1209 (enforcing delegation clause that carved out challenges to class, collective and representative waivers).

While it is generally Plaintiff's burden to prove that an agreement is unconscionable, DoorDash notes that courts have repeatedly held that if an arbitration agreement provides an opportunity to opt out, it is not adhesive and there can be no procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc). Courts therefore have upheld delegation clauses found in voluntary arbitration agreements on the ground that they are not unconscionable. *See Mohamed*, 848 F.3d at 1211 (upholding delegation clause found in arbitration agreement that provided right to opt out).

Here, DoorDash conspicuously notified Plaintiff of her right to opt out of the Arbitration Agreement on the very first page of the ICA, as well as in a standalone section in the Arbitration Agreement with the bolded title, "**CONTRACTOR's Right to Opt Out of Arbitration Provision**." Tang Decl. Ex. A, § XI.8. The Arbitration Agreement states that: (1) "[a]rbitration is not a mandatory condition of [Plaintiff's] contractual relationship with DOORDASH"; and (2) Plaintiff would "not be subject to any adverse action from DOORDASH" if she opted out. *Id.* Plaintiff had 30 days to notify

Gibson, Dunn & Crutcher LLP

DoorDash of her desire to opt out, but failed to do so. Tang Decl. ¶ 12; *see Posephny v. AMN Healthcare Inc.*, 2019 WL 452036, at *7 (N.D. Cal. Feb. 5, 2019) (compelling arbitration when plaintiffs' attempted opt-out was untimely). Indeed, in a similar case, DoorDash recently moved to compel arbitration when a plaintiff's attempted opt-out was untimely. This Court (Judge Edward Chen) granted DoorDash's motion, compelled arbitration, and stayed the case. *See Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23−17:7 (N.D. Cal. Aug. 22, 2019). This Court should do the same.

To the extent Plaintiff claims that her untimely opt-out was effective, that too is an issue for the arbitrator to decide. *See* Tang Decl. Ex. A, § XI.3 ("an arbitrator, and not … any court" shall determine all disputes with respect to Mutual Arbitration Provision's enforceability, applicability, and validity); *Erwin v. Citibank, N.A.*, 2017 WL 1047575, at *4–5 (S.D. Cal. Mar. 20, 2017) (disputes over validity of opt-outs go to arbitrator where—as here—parties delegated issues of arbitrability to the arbitrator).

The arbitrator will find DoorDash's arbitration agreement (including its opt-out procedure) to be enforceable and that Plaintiff failed to opt out within the proscribed time period. Courts regularly enforce mail-only opt-out procedures like the one contained in DoorDash's ICA. *See, e.g.*, *Spikener v. Noble Food Grp., Inc.*, 2018 WL 4677680, at *2 (N.D. Cal. Sept. 27, 2018) (compelling arbitration when plaintiff failed to mail a signed letter requesting to opt out within 30 days); *Bonner v. Mich. Logistics Inc.*, 250 F. Supp. 3d 388, 399–400 (D. Ariz. 2017) (same); *Castro v. Macy's, Inc.*, 2017 WL 344978, at *2–3 (N.D. Cal. Jan. 24, 2017) (same); *see also Voll v. HCL Techs. Ltd.*, 2019 WL 144863, at *2 (N.D. Cal. Jan. 9, 2019) (compelling arbitration when plaintiff failed to request and complete the required opt-out form); *Bradford v. Flagship Facility Servs. Inc.*, 2017 WL 3130072, at *6 (N.D. Cal. July 24, 2017) (compelling arbitration when plaintiff failed to return required opt-out form to human resources department within 30 days). This meaningful opportunity to opt out renders the agreement voluntary and precludes any finding of procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores*, 283 F.3d at 1199; *Kilgore*, 718 F.3d at 1059.

### 2. The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause (it should not), the Court should compel Plaintiff's claims to individual arbitration

Gibson, Dunn &
Crutcher LLP

because both of the "gateway" issues under the FAA have been met here.

### a. A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract ...."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003).  The moving party's burden is light in this regard.  DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists.  *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977).  The Arbitration Agreement contained in the ICA meets all of these requirements.  First, there is no dispute that the parties are capable of contracting.  *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").  Second, there is also no dispute that the Arbitration Agreement had a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration.  *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving litigation); *see also Epic Sys.*, 138 S. Ct. at 1621 (by enacting the FAA, "Congress directed courts to ... treat arbitration agreements as 'valid, irrevocable, and enforceable'").

Third, there is mutual consent.  Plaintiff affirmatively acknowledged her intent—after ample opportunity for review—to be bound by the terms of the ICA, including the conspicuous Arbitration Agreement contained therein.  *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent (Cal. Civ. Code §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").  Plaintiff's manifestation of her acceptance to the ICA by clicking "Sign Up" confirmed her agreement.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract

Gibson, Dunn &
Crutcher LLP

"only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a matter of California law").[2]  In addition to Plaintiff's affirmative assent, DoorDash provided Plaintiff ample opportunity to review the ICA, and 30 days after accepting the ICA to opt out of the Arbitration Agreement.  Tang Decl. Ex. A, § XI.8.  Plaintiff did not opt out of the Arbitration Agreement under the terms of the ICA (*id.* ¶ 13), further evidencing her consent to be bound by its terms.

Finally, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes.  *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.").  All of the elements for the valid formation of an agreement to arbitrate exist here.

### b.      Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

---

[2]  *See also*, *e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by hyperlink); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (holding that contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (compelling arbitration and finding video game user bound by Zynga's terms of service because she clicked the "accept" button immediately above a hyperlink which contained its terms); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

Gibson, Dunn & Crutcher LLP

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION                     CASE NO. 3:19-cv-04637-LB

Here, there is no ambiguity in the agreement. Rather, the language of the Arbitration Agreement makes clear that Plaintiff's claims are subject to arbitration. Specifically, Plaintiff agreed that the Arbitration Agreement would apply to:

> any and all claims arising out of or relating to this Agreement, **CONTRACTOR's classification as an independent contractor**, CONTRACTOR's provision of Contracted Services to consumers, **the payments received by CONTRACTOR for providing services to consumers**, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . claims arising under or related to . . . **[the] Fair Labor Standards Act (or its state or local equivalents)**, state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH.

Tang Decl. Ex. A, § XI.1 (emphasis added). In her Complaint, Plaintiff claims she was misclassified as an independent contractor and alleges causes of action for failure to pay minimum wage in violation of the FLSA and the California Labor Code, failure to pay overtime wages, failure to provide wage statements, failure to provide meal and rest breaks, failure to reimburse business expenses, and unlawful and unfair business practices. All of these claims fall squarely within the scope of the Arbitration Agreement.

Courts examining DoorDash's Arbitration Agreement have compelled arbitration of claims based on plaintiffs' independent-contractor status and all claims for damages. *Magana*, 343 F. Supp. 3d at 899–900; *Farran* (Lipshutz Decl. Ex. A); *Marko* (Lipshutz Decl. Ex. D); *Edwards*, 2017 WL 5514302, at *13; *Edwards*, 2016 WL 7852532, at *14. That same result should follow here.

## C. The Arbitration Class Action Waiver Is Valid And Enforceable

As noted above, under the delegation clause in the Arbitration Agreement, the parties agreed that the Court would decide the question of the enforceability of the Arbitration Class Action Waiver. Tang Decl. Ex. A, § XI.3. It is now well settled that class-action waivers in arbitration agreements governed by the FAA are valid and enforceable. In *Magana*, for example, this Court enforced the ICA's class action waiver and compelled the plaintiff to arbitration on an individual basis. 343 F. Supp. 3d at 901. So did the *Farran* court. Lipshutz Decl. Ex. A, at 2 ("Plaintiff does not … challenge the class action waivers…. The Court notes that these waivers are permitted under the FAA."). The *Marko*

court likewise enforced DoorDash's class-action waiver, holding that the plaintiffs in that case "shall arbitrate their independent contractor status and claims for damages on an individual basis, rather than on a class basis." Lipshutz Decl. Ex. D, at 2.

The Supreme Court has held that the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced ***according to their terms***." *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same). Most recently, the Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

The Arbitration Class Action Waiver bars Plaintiff from arbitrating her FLSA claim on a collective basis. Tang Decl. Ex. A, § XI.3 (parties agreed to individualized arbitration and waived "class, collective, and representative" actions). The Ninth Circuit has long enforced contractual arbitration of FLSA claims. *See Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) ("[T]here is nothing in the text … [or] in the legislative history[] indicating that Congress intended to preclude arbitration of FLSA claims."). And, following *Epic Systems*, several courts have enforced collective-action waivers to preclude collective FLSA claims. *Gaffers*, 900 F.3d at 296 ("[B]ecause the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written."); *Bekele*, 918 F.3d at 186 (*Epic Systems* held "that class and collective action bars in arbitration agreements are not incompatible with the NLRA and are therefore enforceable under the FAA"); *JPMorgan*, 916 F.3d at 504 n.20 (*Epic Systems* "requires enforcement of arbitration agreements that waive collective-action procedures for employees"); *Silva*, 2018 WL 3533364, at *5 ("In *Epic Systems* the Supreme Court held that prohibitions on class action are permissible in arbitration agreements, and so Plaintiff is unable to bring this [FLSA] collective action."); *Herrington*, 907 F.3d at 506 ("*Epic Systems* makes clear that a waiver of the right to proceed in a class or collective arbitration is valid."); *Heidrich*, 2018 WL 3388458, at *3–4 (recognizing that "neither the NLRA … nor the FSLA displace the FAA or prohibit individualized arbitration proceedings" and compelling arbitration);

*Gutierrez*, 2018 WL 6118581, at *5 (compelling arbitration of FLSA claim on individual basis); *Caccavelli*, 2019 WL 499767, at *4 (same); *see also* 29 U.S.C. § 216(b) (FLSA claims may be brought by "any one … employee[]" and thus need not be collective).

Under binding Supreme Court precedent, the parties' agreement not to pursue class, collective, or representative claims is valid and must be enforced. Plaintiff should be compelled to arbitrate her claims on an individual basis pursuant to the terms of the Arbitration Agreement, and these proceedings should be stayed. 9 U.S.C. § 3; *Magana*, 343 F. Supp. 3d at 902 (applying the FAA's "plain language" and deciding to stay—rather than dismiss—case pending arbitration).

**D.     At Minimum, This Action Should Be Stayed Pending Arbitration Of Plaintiff's Individual Claims**

Even if the Court determines that the Arbitration Class Action Waiver is unenforceable (it should not), Plaintiff nevertheless must arbitrate her individual claims. Plaintiff's first, second, third, fourth, fifth, and sixth causes of action seek purely individual relief and thus remain arbitrable regardless of the Arbitration Class Action Waiver's enforceability. *See* Compl. ¶¶ 100–130. At minimum, therefore, Plaintiff should be compelled to arbitrate her individual claims while any non-arbitrable claim is stayed. *See, e.g.*, *Gutierrez*, 2018 WL 6118581, at *5 (staying non-arbitrable claims pending arbitration of individual claims); *Armstrong v. Michaels Stores, Inc.*, 2018 WL 6505997, at *14 (N.D. Cal. Dec. 11, 2018) (same); *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4586960, at *2 (N.D. Cal. Sept. 25, 2018); *Jacobson v. Snap-on Tools Co.*, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (same).

## IV.  CONCLUSION

This Court should compel arbitration on an individual basis and stay this action.


Dated:  September 16, 2019          GIBSON, DUNN & CRUTCHER LLP


                                    By:    _/s/ Joshua Lipshutz_____
                                              Joshua Lipshutz


                                    Attorneys for Defendant DOORDASH, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**PROOF OF SERVICE**

I, Timothy Kolesk, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071, in said County and State. On September 16, 2019, I served the following document(s):

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF STANLEY TANG IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF CODY AUGHNEY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF JOSHUA LIPSHUTZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

On the parties stated below, by the following means of service:

Steven M. Tindall
Aaron Blumenthal
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com

Jahan Sagafi
Relic Sun
Molly Frandsen
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION          CASE NO. 3:19-cv-04637-LB

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2019

_/s/ Timothy Kolesk_
Timothy Kolesk

Gibson, Dunn & Crutcher LLP